UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY SCHWEIGER, | Case No. 11-15345 |
| Plaintiff, | David M. Lawson |
| vs. | United States District Judge |
| CORRECTIONAL MEDICAL SERVICES, INC., PRISON HEALTH SERVICES, INC., PAIN MANAGEMENT COMMITTEE, JEFFREY C. STIEVE, and MARVIN KEELING, | Michael Hluchaniuk United States Magistrate Judge |
| Defendants. | |

_____/

**REPORT AND RECOMMENDATION
MOTION FOR SUMMARY JUDGMENT (Dkt. 12)**

**I.   PROCEDURAL HISTORY**

Plaintiff, an inmate currently at the Mid-Michigan Correctional Facility in St. Louis, Michigan, brings this action under 42 U.S.C. § 1983, claiming a violation of his constitutional rights. (Dkt. 1). In his complaint, filed December 6, 2011, plaintiff claims that, while incarcerated, he received inadequate medical care in violation of the Eighth Amendment protection against cruel and unusual punishment. (*Id*). On December 16, 2011, this case was referred to the undersigned for all pretrial purposes by District Judge David M. Lawson. (Dkt. 7). Defendants Dr. Jeffrey Stieve and the Michigan Department of Corrections ("MDOC") Pain Management Committee (PMC) filed a motion for summary judgment on February 1, 2012. (Dkt. 12). In accordance with an order extending the deadline to file a response (Dkt. 24), plaintiff filed his response to defendants' motion on April 5, 2012. (Dkt. 28). This matter is now ready for report and recommendation

1

For the reasons below, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED** and that plaintiff's claims against Dr. Stieve and the PMC be **DISMISSED** with prejudice.

## II.     FACTUAL BACKGROUND[1]

Plaintiff was diagnosed by MDOC Prison Health Services ("PHS") with cervical radiculopathy on November 10, 2007.  (Dkt. 1, ¶ 21).  On October 3, 2008, he underwent surgical cervical fusion with a bone grafting, performed by Dr. Rawal, as treatment for this problem.  (*Id.* at ¶ 22).   Shortly after this surgery, plaintiff complained to PHS of severe neck and lower back pain, for which he was prescribed pain medications.  (*Id*).  On November 10, 2008, Dr. Muhammad Rais diagnosed plaintiff with chronic cervical and lumbar back pain caused by the surgery, degenerative disk disease, and spinal stenosis.  (*Id.* at ¶ 24).  Dr. Rais referred plaintiff's case to the PMC, an MDOC committee that provides case-by-case recommendations to medical practitioners regarding the most appropriate treatments for pain.  (*Id.* at ¶ 25).  According to defendants, the PMC is:

> [A] vehicle to function as a buffer for pain medications needed by the inmates.  It minimizes the potential wide swings in prescriber patterns for pain as MDOC inmates transfer.  It allows practitioners to obtain non-formulary meds for their patients.  While it gives permission to use these drugs, it is up to the individual MP [medical practitioner] to order/prescribe the drugs. PMC just opens up NF [non-formulary] drugs for potential use.

(Dkt. 12, Ex. A).  On January 7, 2009, the PMC responded to Dr. Rais's request by recommending a variety of pain medications, including Excedrin, Neurontin, Ultram, and a formulary NSAID to be rotated with Lodine.  (Dkt. 1, ¶ 26).

---

[1] The factual background for this case is largely stated according to plaintiff's unsubstantiated complaint.  Because at this time, the defendants do not appear to contest the majority of plaintiff's allegations for purposes of this motion and because this motion can be decided on the bases of the Eleventh Amendment and qualified immunity, the undersigned assumes for the purposes of this report and recommendation that the facts as presented by plaintiff are generally true and accurate.

On May 29, 2009, plaintiff complained to PHS of continuing pain that interfered with his sleep and requested another surgery. (*Id.* at ¶ 27). Dr. Harry Holwerda requested that the PMC reevaluate its recommendations and suggested changes to the pain medication regimen. (*Id.* at ¶ 28). Dr. Holwerda repeated this request when the PMC failed to respond by June 2, 2009. (*Id.* at ¶ 29). On June 17, 2009, the PMC declined to follow Dr. Holwerda's suggestions, but recommended replacing plaintiff's prescriptions for Ultram, Neurontin, and Excedrin with Tylenol, NSAIDs, Pamelor, and Titrate. (*Id.* at ¶ 30). The PMC also rejected plaintiff's request for surgery. (*Id*).

Following the PMC's June 17 recommendation, plaintiff continued to complain of severe pain and made a complaint to PHS, which was reviewed by Dr. Holwerda. (*Id.* at ¶ 31). Dr. Holwerda prepared an appeal to PMC's June 17 regimen, but the PMC denied this request. (*Id).* On July 27, 2009, plaintiff filed a grievance against both Correctional Medical Services, Inc. (CMS) and PHS for failing to adequately treat his severe and chronic back pain. (*Id.* at ¶ 32). This grievance was appealed through all steps of the grievance process and was denied in its entirety. (*Id.* at ¶ 33).

On September 18, 2009, plaintiff made another complaint to PHS, requesting a change in his medications. (*Id.* at ¶ 34). Dr. Holwerda again reviewed plaintiff's case and sent a request to PMC to change plaintiff's medications. (*Id*). On October 21, 2009, the PMC recommended lowering the dosages of plaintiff's medications and made no mention of surgical intervention. (*Id.* at ¶ 35). Shortly thereafter, plaintiff filed another request with PHS to change his treatment, as he was experiencing drowsiness, dizziness, and lightheadedness. (*Id.* at ¶ 36). Plaintiff spoke with an unnamed doctor regarding this issue on November 2, 2009, after which he filed a grievance against PMC for inadequate and ineffective treatment. (*Id.* at ¶ 37). This grievance

was appealed through all steps of the grievance process and was denied in its entirety. (*Id).*

On November 24, 2009, Nancy Martin, a Quality Control Specialist with the Quality Assurance Office, requested that Dr. Jeffrey Stieve perform a chart review on plaintiff's medical records. (Dkt. 12, Ex. A). Dr. Stieve is the Chief Medical Officer at MDOC, as well as the chair of the PMC and numerous other committees. (*Id).* While Dr. Stieve entered a progress note and contacted the medical practitioner regarding some recommendations, he asserts that at no time did he make any decisions regarding plaintiff's case, nor did he provide any direct patient care or review any of plaintiff's grievances. (*Id).* Plaintiff asserts that according to Dr. Stieve's recommendation, Dr. Stieve agreed that plaintiff's pain was appropriately treated with the currently prescribed medications but suggested changing the dosages of the Tegretol and Pamelor. (Dkt. 1, ¶ 38).

On February 22, 2010, plaintiff saw Dr. Maurice Potts in regards to plaintiff's allegedly ineffective medications. (*Id*. at ¶ 39). Dr. Potts assured plaintiff that he would look into the matter, and he sent an appeal to the PMC on February 29, 2010. (*Id.* at ¶¶ 39-40). Plaintiff saw Dr. Potts again on March 24, 2010, and was informed that the PMC had not recommended a change in his medications. (*Id.* at ¶ 40).

On June 11, 2010, plaintiff saw Physician's Assistant Kearney regarding his severe and chronic pain. (*Id.* at ¶ 41). Kearney discontinued the NSAIDs due to acid indigestion and possible ulcers and prescribed Prilosec and Tums. (*Id*). On August 4, 2010, PHS submitted a request to the PMC to reevaluate plaintiff's pain treatment plan. (*Id.* at ¶ 42). On November 3, 2010, plaintiff sent another such request. (*Id.* at ¶ 44). On December 21, 2010, the PMC recommended that plaintiff's medications remain unchanged, with the exception of replacing the Tegretol with Dilantin. (*Id*).

4

On March 9, 2011, plaintiff saw Dr. Marvin Keeling due to continued pain and severe side effects from the Dilantin. (*Id.* at ¶ 45). Dr. Keeling allegedly refused to file an appeal of the PMC's treatment regimen because he claimed plaintiff was a drug addict. (*Id*). However, he removed plaintiff from the Dilantin. (*Id*). Plaintiff then filed a grievance against Dr. Keeling for his failure to treat and failure to file an appeal to the PMC. (*Id.* at ¶ 46). This grievance was appealed through all steps of the grievance process and was denied in its entirety. (*Id*). On May 5, 2011, plaintiff filed a second grievance against Dr. Keeling for his continued use of ineffective treatments. (*Id.* at ¶ 47). In this grievance, plaintiff also requested an MRI scan and a visit to a specialist. (*Id*). This grievance was also denied through all steps of the grievance process. (*Id*). On May 24, plaintiff filed a third grievance against Dr. Keeling and against the PMC for ineffective treatment, which was again denied through all stages of the grievance process. (*Id.* at ¶ 48).

Shortly thereafter, plaintiff saw Dr. Keeling regarding sharp and lacerating pain, which he claimed was worsening such that he was also experiencing numbness and tingling in the lower spine that radiated down his legs. (*Id.* at ¶ 49). Dr. Keeling sent a consultation request to the PMC, but the PMC did not recommend any changes in plaintiff's medications. (*Id.* at ¶ 50). On September 10, 2011, plaintiff sent a medical request to PHS because he claimed that the Pamelor and other medications were not adequately treating his pain. (*Id.* at ¶ 51). Plaintiff was seen by Dr. Keeling on September 26, 2011, who found plaintiff to be negative for back pain and muscle weakness. (*Id.* at ¶ 53).

Plaintiff claims that he continues to suffer from chronic and severe back pain and that this problem has limited his movement, restricted him from rudimentary daily activities, and necessitated the use of a cane in order to walk. (*Id.* at ¶¶ 55, 58). Plaintiff alleges that

defendants CMS, PHS, PMC, Dr. Stieve, and Dr. Marvin Keeling knew of his serious medical need and repeatedly denied him expensive medications, corrective surgery, off-site evaluations from specialists, and adequate treatment. (*Id.* at ¶¶ 56-57). Specifically, plaintiff is suing CMS, PHS, PMC, Dr. Stieve (in his official and individual capacities), and Dr. Keeling (in his official and individual capacities) for denial of adequate medical care in violation of his Eighth Amendment right to be free from cruel and unusual punishment. (Dkt. 1). Additionally, plaintiff is suing CMS and PHS as a third party beneficiary for breach of contract. (*Id*).

Defendants PMC and Dr. Stieve argue in their motion for summary judgment that plaintiff's claim as against them must fail due to: (1) Eleventh Amendment sovereign immunity; (2) qualified immunity; (3) Dr. Stieve's lack of personal involvement; and (4) the lack of deliberate indifference pursuant to Eighth Amendment standards. (Dkt. 12).

### III.   ANALYSIS AND CONCLUSIONS

#### A.   Standard of Review

Summary judgment is appropriately rendered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004). In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

    B.    Section 1983 Claim

        1.    Eleventh Amendment

Plaintiff has asserted a § 1983 claim against the PMC[2] and Dr. Stieve, in both his official and individual capacities. Because the PMC is an administrative unit of MDOC, a state entity, this claim is barred by the Eleventh Amendment, which prohibits suits in federal court against the state or any of its agencies or departments. *See Greenman v. Oulette*, No. 1:10-cv-549, 2010 U.S. Dist. LEXIS 74344 at *2 (W.D. Mich. July 23, 2010) (holding that plaintiff's § 1983 claim

---

[2] While plaintiff attempted to assert a claim against the members of the PMC in their individual capacities, he named only the Pain Management Committee, an administrative entity, as a defendant and not its individual members. In prior case law, a named institutional defendant has been entitled to a dismissal of a claim based on Eleventh Amendment sovereign immunity, but the plaintiff was allowed to amend his complaint to add individual defendants by name where that amendment was not time-barred. *See Black-Hosang v. Ohio Dep't of Pub. Safety*, 96 Fed. Appx. 372, 373-74 (6th Cir. 2004).

against the Pain Management Committee was barred by the Eleventh Amendment), citing *Pennhurst State Sch. & Hosp. v. Haldermann*, 465 U.S. 89, 100 (1984). Moreover, plaintiff's claim against the PMC is not in accord with the statutory requirement that the defendant in a §1983 action be a "person." *See id.* ("Neither a state corrections department nor its administrative units are "persons" within the meaning of section 1983."), citing *Will v. Michigan Dep't. of State Police*, 491 U.S. 58 (1989). The Eleventh Amendment also bars actions for monetary damages against state employees, such as Dr. Stieve, in their official capacities. *Will*, 491 U.S. at 71; *McClennon v. Bell*, No. 97-5953, 1998 U.S. App. LEXIS 28176 at *5 (6th Cir. Nov. 2, 1998). Thus, neither the PMC nor Dr. Stieve, in his official capacity, are subject to plaintiff's § 1983 claim. Given these facts, plaintiff's § 1983 claims against the PMC and Dr. Stieve in his official capacity should be dismissed.

    2.  Qualified Immunity

Defendant Dr. Stieve claims to be entitled to qualified immunity regarding plaintiff's claim against him in his individual capacity. Qualified immunity offers protection to government officials performing discretionary functions, "shield[ing] [them] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992). The defendants bear the burden of pleading qualified immunity, and the plaintiff bears the burden of showing that defendants are not entitled to it. *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002).

In order to show that qualified immunity is not applicable, a plaintiff must fulfill a two-part test. First, he must demonstrate that the facts of the case, viewed in the light most favorable to the plaintiff, show that the state officer's conduct violated a constitutional right. *Pearson v.*

8

*Callahan*, 555 U.S. 223, 236 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Secondly, the plaintiff must show that this constitutional right is clearly established. *Pearson*, 555 U.S. at 236; *Saucier*, 533 U.S. at 201. Therefore, the undersigned must analyze whether the facts, as construed in the light most favorable to plaintiff, show that his constitutional rights have been violated.

### a. Deliberate Indifference

Plaintiff contends that Dr. Stieve denied him adequate medical care in the course of the chart review by pursuing a consistent course of treatment that plaintiff alleges to have been ineffective and by permitting plaintiff to suffer continual, severe, and chronic back pain. It has been widely recognized that the provision of inadequate medical care to a prisoner gives rise to liability under § 1983. *See e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 2006). However, liability is imposed only if the allegations arise to the level of a constitutional deprivation. *Caldwell*, 968 F.2d at 599.

In order to make a claim of an Eighth Amendment violation due to inadequate medical treatment, two requirements must be met, an objective element and a subjective element. First, "the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at 834. In the medical context, this means that the plaintiff must show that he had a serious medical need that has been either diagnosed by a physician as requiring treatment or is so obvious that a lay person could recognize the necessity for treatment. *Robinson v. Caruso*, No. 08-14069, 2010 U.S. Dist. LEXIS 28412 at *16 (E.D. Mich. February 26, 2010). Second, "a prison official must have a 'sufficiently culpable state of mind,'" such that his actions constitute an unnecessary and wanton infliction of pain. *Farmer*, 511 U.S. at 834. That is, the defendant, being aware of the

9

plaintiff's serious medical need, acts in deliberate indifference to it. *Wilson v. Seiter*, 501 U.S. 294, 300 (1991).

In the present case, plaintiff has met the first requirement. He has sufficiently alleged that he was diagnosed by Drs. Rawal and Rais with post-surgical pain, cervical discectomy, and lumbar disc problems that required a surgery and a regimen of medications to treat the pain. Therefore, it can be said that plaintiff's back afflictions and related pain present serious medical needs that have been diagnosed by at least two physicians.

However, plaintiff cannot prevail in demonstrating that Dr. Stieve was deliberately indifferent to his medical needs. In order to establish a defendant's culpable state of mind, a plaintiff must show that the defendant acted recklessly – specifically, that he "[knew] of and disregard[ed] an excessive risk to inmate health and safety." *See Farmer*, 511 U.S. at 836-37. This standard entails a "state of mind more blameworthy than negligence," but is "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 836.

Dr. Steive's personal involvement in plaintiff's case was limited to the performance of a quality control chart review and the entering of a progress note in which he made recommendations to the treating medical practitioner regarding plaintiff's care. In Dr. Stieve's opinion, plaintiff's back conditions were being treated appropriately with the currently prescribed medications. However, he agreed to contact the medical practitioner to make two dosage modifications. Additionally, he noted that the PMC could be contacted any time a recommendation was not meeting plaintiff's medical needs. Such consideration by Dr. Stieve does not evince a deliberate indifference to plaintiff's medical needs or a reckless disregard of plaintiff's pain. *Cf. Bertl v. City of Westland*, No. 07-2547, 2009 U.S. App. LEXIS 2086 at *16-

17 (6th Cir. February 2, 2009) (finding that a nurse who refused to take the vital signs of an inmate who was lying face down on the floor of his cell, almost comatose, unresponsive and having seizure-like spasms to have exhibited deliberate indifference); *Cooper v. County of Washtenaw*, 222 Fed.Appx. 459, 462-63, 469 (6th Cir. 2007) (finding that an issue of material fact existed regarding a police officer's deliberate indifference where he failed to notify anyone of an inmate's suicide watch status when the inmate was placed unsupervised in a holding cell, where he hanged himself). It is clear that Dr. Stieve made an educated recommendation based on his medical judgment and a review of plaintiff's chart. Plaintiff's dissatisfaction with Dr. Stieve's recommendation is essentially a mere disagreement with the course of treatment provided, which cannot not rise to the level of an Eighth Amendment deprivation. *See, e.g.*, *Estelle*, 429 U.S. at 107; *Westlake*, 537 F.2d at 860 n. 5. Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake*, 537 F.2d at 860, n. 5. Thus, the undersigned finds that Dr. Stieve did not exhibit deliberate indifference towards plaintiff's afflictions and therefore did not violate plaintiff's Eighth Amendment rights.

                b.        Respondeat Superior Liability

Defendant Dr. Stieve also construes plaintiff's complaint to state a claim against him on the basis of respondeat superior liability for the actions of the PMC, a committee which he chairs. Case law has established that "§ 1983 liability of supervisory personnel must be based on more than the right to control employees . . . . There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). That is, in order to establish liability, a

plaintiff must show that the supervisory official "implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id.*

Plaintiff has not shown that Dr. Stieve directly participated in or authorized any unconstitutional conduct instigated by other members of the PMC. Dr. Stieve's involvement with plaintiff's case, as described above, was limited to conducting a quality control chart review and making recommendations. *See e.g.*, *Estate of Roscoe Young v. Martin*, 70 Fed.Appx. 256, 260-61 (6th Cir. 2003) (finding that defendant was not personally involved in, nor did he encourage or condone, the potentially unconstitutional conduct of others where his involvement in the prisoner's care was limited to taking one phone call from the prisoner's relative, who raised only general concerns about the adequacy of the prisoner's health care). There are no facts indicating, and plaintiff does not allege, that Dr. Stieve personally authorized or acquiesced in any of the PMC's opinions or medical recommendations regarding plaintiff's care. To the contrary, Dr. Stieve asserts in his affidavit that he had no involvement with the medical decisions or patient care provided to plaintiff beyond the aforementioned chart review.

Moreover, plaintiff has not demonstrated that the PMC engaged in unconstitutional conduct. According to Dr. Stieve's affidavit, PMC reviews were conducted on the following dates: January 7, 2009; June 17, 2009; October 21, 2009; May 12, 2010; September 1, 2010; December 21, 2010; June 29, 2011; and October 19, 2011. According to plaintiff's allegations in his complaint, PMC also reviewed plaintiff's care sometime between June 17 and July 27 of 2009, as well as in March of 2010. Additionally, Dr. Stieve reviewed plaintiff's treatment on November 24, 2009. Thus, the PMC reviewed plaintiff's care a total of eleven times over the course of approximately three years. PMC's recommendations took place in addition to numerous consultations and chart reviews by medical practitioners, taking place on the following

dates: October 3, 2008; November 10, 2008; May 29, 2009; June 2, 2009; late June or July of 2009; September 18, 2009; November 2, 2009; February 22, 2010; March 24, 2010; June 11, 2010; March 9, 2011; May or June of 2011; and September 26, 2011. This list encompasses a total of thirteen instances of doctor care or visits over a span of three years. Given the regular, consistent care and treatment provided by the PMC, it cannot be said that the treatment plaintiff received was so woefully inadequate as to violate his Eighth Amendment rights. *See e.g.*, *Estelle*, 429 U.S. at 107 (holding that where a plaintiff was seen by medical personnel on 17 separate occasions and was prescribed medications, the medical decisions did not represent cruel and unusual punishment); *Robinson*, 2010 U.S. Dist. LEXIS 28412 at *22-24 (holding that where plaintiff received medical attention on nine separate occasions for her dental problem, this consistent care did not support a finding of inadequate medical treatment). Additionally, plaintiff's dispute appears to arise from disagreement with the course of treatment pursued. As discussed above, such disagreement does not rise to the level of a constitutional violation. *See e.g.*, *Estelle*, 429 U.S. at 107; *Westlake*, 537 F.2d at 860, n. 5.

In light of this discussion, the undersigned finds that plaintiff has not established that Dr. Stieve or the PMC violated his Eighth Amendment rights by failing to provide adequate medical care. Therefore, Dr. Stieve is entitled to qualified immunity, and plaintiff's claim against him in his individual capacity should be dismissed.

**IV.  RECOMMENDATION**

Given the above conclusions, the undersigned **RECOMMENDS** that defendants' motion be **GRANTED** and with respect to defendants PMC and Dr. Stieve, that plaintiff's claim be **DISMISSED** with prejudice.

The parties to this action may object to and seek review of this Report and

13

Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.,* 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:   August 15, 2012                              s/Michael Hluchaniuk
                                                     Michael Hluchaniuk
                                                     United States Magistrate Judge

## CERTIFICATE OF SERVICE

      I certify that on August 15, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Brian J. Richtarcik, Matt H. Wesorick, Randall A. Juip, Kimberley A. Koester, Ronald W. Chapman, and Kevin R. Himebaugh, and I certify that I have mailed by United States Postal Service the foregoing pleading to the following non-ECF participant(s), at the following address(es): Timothy Schweiger, ID# 465397, PUGSLEY CORRECTIONAL FACILITY, 7401 East Walton Road, Kingsley, MI 49649.

                                                  s/Tammy Hallwood
                                                  Case Manager
                                                  810.341.7887
                                                  tammy_hallwood@mied.uscourts.gov