UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY SCHWEIGER,                              Case No. 11-15345

           Plaintiff,                        David M. Lawson
v.                                              United States District Judge

CORRECTIONAL MEDICAL SERVICES,                  Michael Hluchaniuk
INC., PRISON HEALTH SERVICES, INC.,             United States Magistrate Judge
PAIN MANAGEMENT COMMITTEE,
JEFFREY C. STIEVE, and
MARVIN KEELING,

           Defendants.
_____/

**REPORT AND RECOMMENDATION**
**DEFENDANTS' MOTIONS TO DISMISS (Dkt. 26, 31)**

## I.    PROCEDURAL HISTORY

Plaintiff, an inmate currently at the Macomb Regional Correctional Facility in New Haven, Michigan, brings this action under 42 U.S.C. § 1983, claiming a violation of his constitutional rights.  (Dkt. 1).  In his complaint, filed December 6, 2011, plaintiff claims that, while incarcerated at the Mid-Michigan Correctional Facility in St. Louis, Michigan, he received inadequate medical care in violation of the Eighth Amendment protection against cruel and unusual punishment.  (*Id.*)  On December 16, 2011, this case was referred to the undersigned for all pretrial purposes by District Judge David M. Lawson.  (Dkt. 7).

On February 1, 2012, defendants Dr. Jeffrey Stieve and the Michigan Department of Corrections ("MDOC") Pain Management Committee ("PMC") filed a motion for summary judgment. (Dkt. 12). On August 15, 2012, the undersigned recommended that the motion for summary judgment be granted with respect to defendants PMC and Dr. Stieve, and that plaintiff's claim against them be dismissed with prejudice. (Dkt. 51). In accordance with an order granting plaintiff's motion to extend the deadline to file objections (Dkt. 56), Plaintiff filed an objection to this report and recommendation on September 5, 2012. (Dkt. 55). The Court has not yet ruled on plaintiff's objection to the report and recommendation.

On March 26, 2012, defendant Corizon, Inc., f/k/a Correctional Medical Services, Inc. ("CMS") filed a motion to dismiss pursuant to 42 U.S.C. § 1997e(a) and Fed. R. Civ. P. 12(b)(6). (Dkt. 26). On April 11, 2012, defendant Prison Health Services, Inc. ("PHS") filed a Rule 12(b)(6) motion to dismiss. (Dkt. 31). In accordance with an order extending the deadline to file a response to both motions (Dkt. 35), plaintiff filed his responses to defendants CMS's and PHS's motions on June 25, 2012. (Dkt. 39, 40). Defendants PHS and CMS filed reply briefs on July 5, 2012. (Dkt. 44, 46). This matter is now ready for report and recommendation.

For the reasons below, the undersigned **RECOMMENDS** that defendants

2

PHS's and CMS's motions to dismiss be **GRANTED** and that plaintiff's claims

against CMS and PHS be **DISMISSED**.  The undersigned further

**RECOMMENDS** that Defendant CMS's Motion to Dismiss for Failure to

Prosecute Pursuant to Fed. R. Civ. P. 41(b) (Dkt. 60) be **TERMINATED** as

**MOOT**, and that Defendants's PHS's and Dr. Marvin Keeling's Motion to

Dismiss Plaintiff's Suit Pursuant to Fed. R. Civ. P. 41 (Dkt. 64) be **DENIED IN**

**PART** as **MOOT** as to Defendant PHS only.[1]

## II.     FACTUAL BACKGROUND

### A.     Plaintiff's Complaint

According to plaintiff's complaint, Plaintiff was diagnosed by MDOC

Health Services with cervical radiculopathy on November 10, 2007. (Dkt. 1, ¶ 21).

On October 3, 2008, he underwent surgical cervical fusion with a bone grafting,

performed by Dr. Rawal, as treatment for this problem. (*Id.* at ¶ 22)  Shortly after

this surgery, plaintiff complained to "Health Care"[2] of continued severe neck and

---

[1] This motion (Dkt. 64) is denied in part because defendant Dr. Keeling has not filed a motion to dismiss on the merits.

[2] Plaintiff generally refers to defendants as "Health Care" in his complaint, without differentiating between defendants CMS or PHS.  Defendant CMS asks the Court to take judicial notice as a matter of pubic record that it was under contract with the State of Michigan to provide certain health care services to prisoners incarcerated in the MDOC through March 31, 2009, and that after that date, defendant PHS began providing health care services.  (Dkt. 26, p. 10 n.2).  The undersigned takes judicial notice that CMS's contract with the MDOC expired on March 31, 2009, http://www.senate.michigan.gov/sfa/Publications

lower back pain.  (*Id*).

On November 10, 2008, Dr. Muhammad Rais diagnosed plaintiff with chronic cervical and lumbar back pain caused by the surgery, degenerative disk disease, and spinal stenosis.  (*Id.* at ¶ 24).  Dr. Rais referred plaintiff's case to the MDOC PMC, requesting pain medication for plaintiff.  (*Id.* at ¶ 25).  On January 7, 2009, the PMC responded to Dr. Rais's request by recommending a variety of pain medications, including Excedrin, Neurontin, Ultram, and a formulary NSAID to be rotated with Lodine.  (Dkt. 1, ¶ 26).

On May 29, 2009, plaintiff complained to Health Care of continuing pain that interfered with his sleep and requested another surgery.  (*Id.* at ¶ 27).  Dr. Harry Holwerda requested that the PMC reevaluate its recommendations and suggested changes to the pain medication regimen.  (*Id.* at ¶ 28).  Dr. Holwerda repeated this request when the PMC failed to respond by June 2, 2009.  (*Id.* at ¶ 29).  On June 17, 2009, the PMC declined to follow Dr. Holwerda's suggestions, but recommended replacing plaintiff's prescriptions for Ultram, Neurontin, and Excedrin with Tylenol, NSAIDs, and Pamelor.  (*Id.* at ¶ 30).  The PMC also

---

/Notes/2008Notes/NotesNovDec08lh.pdf, and that the contract between PHS and the State of Michigan, Contract No. 071B9200147, is a public record and provides a contract period from February 10, 2009 to March 31, 2012, for the provision of prisoner health care services at all MDOC correctional facilities.  *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (a court may consider public records and facts susceptible to judicial notice without converting a motion to dismiss into one for summary judgment).

rejected plaintiff's request for surgery. (*Id*).

Following the PMC's June 17 recommendation, plaintiff continued to complain of severe pain and made a complaint to Health Care, which was reviewed by Dr. Holwerda. (*Id.* at ¶ 31). Dr. Holwerda prepared an appeal to PMC's June 17 regimen, but the PMC denied this request. (*Id*).

On July 27, 2009, plaintiff filed a grievance against both CMS and PHS for failing to adequately treat his severe and chronic back pain. (*Id.* at ¶ 32). This grievance was appealed through all steps of the grievance process and was denied in its entirety. (*Id.* at ¶ 33).

On September 18, 2009, plaintiff made another complaint to Health Care, requesting a change in his medications. (*Id.* at ¶ 34). Dr. Holwerda again reviewed plaintiff's case and sent a request to PMC to change plaintiff's medications. (*Id*). On October 21, 2009, the PMC responded to Dr. Holwerda's request and recommended lowering the dosages of plaintiff's medications and made no mention of surgical intervention. (*Id.* at ¶ 35). Shortly thereafter, plaintiff filed another request with Health Care to change his treatment, as he was experiencing drowsiness, dizziness, and lightheadedness. (*Id.* at ¶ 36). Plaintiff spoke with an unnamed doctor regarding this issue on November 2, 2009, after which he filed a grievance against PMC for inadequate and ineffective treatment. (*Id.* at ¶ 37). This grievance was appealed through all steps of the grievance

process and was denied in its entirety. (*Id*).

On November 24, 2009, Dr. Stieve prepared a health care progress note in which he agreed that plaintiff's complaints were appropriately treated with the currently prescribed medications. (*Id*. at ¶ 38). Dr. Stieve also agreed to contact the medical provider to decrease the Tegretol and increase the Pamelor. (*Id*.).

On February 22, 2010, plaintiff saw Dr. Maurice Potts in regards to plaintiff's allegedly ineffective medications. (*Id*. at ¶ 39). Dr. Potts assured plaintiff that he would look into the matter, and he sent an appeal to the PMC on February 29, 2010. (*Id*. at ¶¶ 39-40). Plaintiff saw Dr. Potts again on March 24, 2010, and was informed that the PMC had not recommended a change in his medications. (*Id*. at ¶ 40).

On June 11, 2010, plaintiff saw Physician's Assistant Kearney regarding his severe and chronic pain. (*Id*. at ¶ 41). Kearney discontinued the NSAIDs due to acid indigestion and possible ulcers and prescribed Prilosec and Tums. (*Id*). On August 4, 2010, health care services submitted a request to the PMC to reevaluate plaintiff's pain treatment plan. (*Id*. at ¶ 42). Plaintiff sent a request to Health Care asking to see a doctor, claiming that the new pain management plan was not working. (*Id*. at ¶ 43). On November 3, 2010, plaintiff sent another such request. (*Id*. at ¶ 44). The PMC responded in January 2011 and recommended that plaintiff's medications remain unchanged, with the exception of replacing the

6

Tegretol with Dilantin. (*Id*).

On March 9, 2011, plaintiff saw defendant Dr. Marvin Keeling due to continued pain and severe side effects from the Dilantin. (*Id.* at ¶ 45). Dr. Keeling allegedly refused to file an appeal of the PMC's treatment regimen because he claimed plaintiff was a drug addict. (*Id*). However, he removed plaintiff from the Dilantin. (*Id*). Plaintiff then filed a grievance against Dr. Keeling for his failure to treat and failure to file an appeal to the PMC. (*Id.* at ¶ 46). This grievance was appealed through all steps of the grievance process and was denied in its entirety. (*Id*). On May 5, 2011, plaintiff filed a second grievance against Dr. Keeling for his continued use of ineffective treatments. (*Id.* at ¶ 47). In this grievance, plaintiff also requested an MRI scan and a visit to a specialist. (*Id*). This grievance was also denied through all steps of the grievance process. (*Id*). On May 24, plaintiff filed a third grievance against Dr. Keeling and against the PMC for ineffective treatment, which was again denied through all stages of the grievance process, on the grounds that plaintiff's disagreement with the care of a qualified professional did not support a claim of denial of care. (*Id.* at ¶ 48).

Shortly thereafter, plaintiff saw Dr. Keeling regarding sharp and lacerating pain, which he claimed was worsening such that he was also experiencing numbness and tingling in the lower spine that radiated down his legs. (*Id.* at ¶ 49). Dr. Keeling sent a consultation request to the PMC, but the PMC did not

recommend any changes in plaintiff's medications. (*Id.* at ¶¶ 49-50).

On September 10, 2011, plaintiff sent a medical request to Health Care because he claimed that the Pamelor and other medications were not adequately treating his pain. (*Id.* at ¶ 51). Plaintiff alleges that Health Care responded by scheduling a sick appointment for plaintiff on September 14, 2011. (*Id.* at ¶ 52). Plaintiff was seen by Dr. Keeling on September 26, 2011, who found plaintiff to be negative for back pain and muscle weakness. (*Id.* at ¶ 53).

Plaintiff claims that he continues to suffer from chronic and severe back pain and that this problem has limited his movement, restricted him from rudimentary daily activities, and necessitated the use of a cane in order to walk. (*Id.* at ¶¶ 55, 58). Plaintiff alleges that defendants CMS and PHS, along with defendants PMC, Dr. Stieve, and Dr. Marvin Keeling, knew of his serious medical need and repeatedly denied him expensive medications, corrective surgery, off-site evaluations from specialists, and adequate treatment. (*Id.* at ¶¶ 56-57). Specifically, plaintiff is suing CMS, PHS, PMC, Dr. Stieve (in his official and individual capacities), and Dr. Keeling (in his official and individual capacities) for denial of adequate medical care in violation of his Eighth Amendment right to be free from cruel and unusual punishment. (Dkt. 1). Additionally, plaintiff is suing defendants CMS and PHS as a third party beneficiary for breach of the defendants' contracts with the State of Michigan to provide prisoner health care

8

services.  (*Id*).

**B.     Motions Before the Court**

       **1.     Defendant CMS's motions to dismiss (Dkt. 26)**

Defendant CMS filed a motion to dismiss on March 26, 2012, in which it argues that plaintiff's complaint fails to state a claim against CMS pursuant to 42 U.S.C. § 1983 because (1) plaintiff fails to allege personal involvement by CMS in the activity forming the basis of plaintiff's complaint, (2) plaintiff has failed to sufficiently plead that defendant CMS has a policy, practice or procedure that proximately caused the claimed injury, and (3) plaintiff fails to adequately plead deliberate indifference.  Defendant CMS also argues that plaintiff failed to properly exhaust his administrative remedies prior to filing his complaint, and that plaintiff lacks standing to bring his state law claim for third party beneficiary breach of contract because he fails to allege that either CMS or MDOC made any promise underlying their alleged contract for the provision of certain medical services to inmates "directly to or for" plaintiff.  Defendant CMS also argues that the court should decline to exercise supplemental jurisdiction over plaintiff's state law claim.  (Dkt. 26).

Plaintiff responds that he has sufficiently stated a claim against defendant CMS for a violation of 42 U.S.C. § 1983 to survive a motion to dismiss.  Plaintiff also argues that the grievances attached to defendant CMS's motion demonstrate

that he properly exhausted his administrative remedies as to defendant CMS.

Finally, plaintiff responds that this Court should exercise supplemental jurisdiction

over his third party beneficiary breach of contract claim.

### 2.    Defendant PHS's motion to dismiss (Dkt. 31)

Defendant PHS filed a motion to dismiss on April 11, 2012.  Defendant

PHS argues that plaintiff has not sufficiently alleged a claim under 42 U.S.C. §

1983 against it because plaintiff's vague allegations that he was denied medical

care to reduce costs, without more, cannot support a § 1983 claim against PHS.

PHS also argues that plaintiff's third party beneficiary breach of contract claim

fails as a matter of law because plaintiff cannot establish that he is an intended

third party beneficiary of the contract between PHS and the MDOC, and plaintiff

is attempting to improperly restyle a § 1983 or medical malpractice claim as a

breach of contract claim.  (Dkt. 31).

Plaintiff responds that his complaint sufficiently alleges that PHS had a

custom or pattern of denying adequate medical care, and that the Court should

exercise its discretion to exercise supplemental jurisdiction over plaintiff's state

law claim.  (Dkt. 40).

## III.    ANALYSIS AND CONCLUSION

### A.    Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first

comply with Rule 8(a)(2), which requires "'a short and plain statement of the
claim showing that the pleader is entitled to relief,' in order to 'give the defendant
fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell
Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*,
355 U.S. 41, 47 (1957)).  A plaintiff is also obliged "to provide the grounds of his
entitlement to relief," which "requires more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action will not do."  *Ass'n of
Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007)
(quoting *Twombly*, 550 U.S. at 555 (citations and internal quotation marks
omitted)).  And, while a complaint need not contain "detailed" factual allegations,
its "[f]actual allegations must be enough to raise a right to relief above the
speculative level on the assumption that all the allegations in the complaint are
true."  *Id.* (quoting *Twombly*, 550 U.S. at 555 (citation and internal quotation
marks omitted)); *see also League of United Latin Am. Citizens v. Bredesen*, 500
F.3d 523, 527 (6th Cir. 2007) ("The factual allegations in a complaint need not be
detailed but they "must do more than create speculation or suspicion of a legally
cognizable cause of action; they must show *entitlement* to relief.") (emphasis in
original).

    The Sixth Circuit recognized that in *Erickson v. Pardus*, 551 U.S. 89
(2007), "a case decided just two weeks after *Twombly*, the Supreme Court clarified

*Twombly* by holding that a prisoner bringing a § 1983 claim against his captor is not required to state [s]pecific facts in their complaint; and *Twombly* itself suggests that its holding may be limited to cases likely to produce sprawling, costly, and hugely time-consuming litigation." *U.S. v. Ford Motor Co.*, 532 F.3d 496, 502 n.6 (6th Cir. 2008) (citations and internal quotation marks omitted). The Sixth Circuit applied a more stringent pleading standard in *U.S. v. Ford* because a fraud claim was involved, which requires the application of the heightened pleading standard set forth in Rule 9(b), rather than the more liberal pleading standard found in Rule 8(a)(2). Thus, when applying *Twombly*, except as to a claim of fraud, the Court must still read plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519 (1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Erickson*, 551 U.S. at 93-94 (the Court of Appeals improperly departed "from the liberal pleading standards set forth by Rule 8(a)(2)" and failed to "liberally construe" the *pro se* complaint at issue.).

Generally if a court considers matters outside of the pleadings, the court must convert the motion into one for summary judgment under Rule 56. However, "[w]hen a court is presented with a 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are

referred to in the Complaint and are central to the claims contained therein."
*Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *see also*
*Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (noting that the Sixth
Circuit has "held that 'documents that a defendant attaches to a motion to dismiss
are considered part of the pleadings if they are referred to in the plaintiff's
complaint and are central to h[is] claim'") (quoting *Venture Assocs. Corp. v.
Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).  Thus, "[t]he court
may take judicial notice of the administrative record reflecting plaintiff's
exhaustion of administrative remedies without converting the motions into one for
summary judgment."  *See Russell v. Tribley*, 2011 WL 4387589, at *3 (E.D. Mich.
Aug. 10, 2011), *Report & Recommendation adopted by* 2011 WL 4396784 (E.D.
Mich. Sept. 21, 2011).

## B.    CMS's Failure to Exhaust Administrative Remedies Claim

Defendant CMS argues that plaintiff failed to exhaust his administrative
remedies because all of the grievances alleged in plaintiff's complaint were filed
from several months to years after CMS was no longer under contract to provide
certain medical services to inmates in the MDOC.  CMS also argues that it was
only named in one of those grievances, and that grievance only made "historical
reference" to CMS but did not allege any misconduct by CMS.  (Dkt. 26, p. 14).
Plaintiff responds that he adequately identified and put CMS on notice by naming

13

"health care" in the grievances.

### 1.   Legal standard

42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Under the Michigan Department of Corrections Policy Directive 03.02.130, prisoners and parolees may seek "redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement." MDOC PD 03 .02.130 ("Prisoner/Parolee Grievances").

Section § 1997e(a)'s "exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle,* 534 U.S. 516, 520 (2002).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532.  In *Jones v. Bock,* 549 U.S. 199 (2007), the Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones,* 549 U.S. at 216.  "Compliance with prison grievance procedures ... is all that is required by the PLRA to 'properly exhaust.'" *Jones,* 549 U.S. at 218.

"Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner,* 532 U.S. 731, 741 n. 6 (2001). "[P]roper exhaustion of administrative remedies is necessary." *Woodford v. Ngo,* 548 U.S. 81, 84 (2006).

"It is appropriate for defendants in a prisoner civil rights action to raise the affirmative defense of failure to exhaust administrative remedies in a motion to dismiss." *Diing v. Graeser*, 2012 WL 851132, at *4 (W.D. Mich. Jan. 27, 2012) (citing *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir.), *cert. denied*, 555 U.S. 1074 (2008)), *Report & Recommendation adopted by* 2012 WL 847321 (W.D. Mich. Mar. 13, 2012). "Because exhaustion of administrative remedies is a matter of abatement and not generally an adjudication on the merits, an exhaustion defense [under the PLRA] . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Id.* (citation and internal quotations omitted). Further, the court may take judicial notice of a plaintiff's grievance filings for purposes of deciding a motion to dismiss. *Id.* (citations omitted).

## 2.     MDOC Policy

Pursuant to MDOC policy directive 03.02.130 entitled "Prisoner/Parolee Grievances," (Dkt. 26-11), there are four stages to the grievance process that must be followed before a prisoner can seek judicial intervention, each with specific

time limits.   First, the prisoner must attempt to verbally resolve the issue with the staff member(s) involved within two business days of becoming aware of a grievable issue.  If the issue is not resolved, the prisoner may file a Step I grievance within five business days of the attempted verbal resolution.  If the prisoner is not satisfied with the Step I outcome, he must request a Step II appeal form within five days, and he then has an additional five days to file the Step II appeal.  If the inmate is still not satisfied with the result, he must then file a Step III appeal within 10 business days.  The Step III response ends the administrative process.

When filing a grievance and/or grievance appeal, an inmate must state the facts involved with the issue being grieved, and must also include the "[d]ates, times, places, and names of all those involved in the issue being grieved."  (Dkt. 26-11).  A grievance may be rejected if it is vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of those raised in another grievance filed by the grievant.  A grievance may also be rejected if the grievance is untimely.  *Id.*

### 3.    Plaintiff's Grievances

The administrative grievance records referenced in plaintiff's complaint and attached to defendant CMS's motion to dismiss reveal that plaintiff pursued five grievances through Step III of the grievance process during the time period alleged

16

in the complaint:[3]

- *SLF-09-07-973-12z*: filed July 27, 2009, naming CMS and PHS and grieving an issue concerning "medical negligence and malpractice" and requesting reinstatement of prior medication. Plaintiff complains that pain medication was discontinued "due to the costs that P.H.S. would save by using non-effective medications of lesser value."

- *SLF-09-12-1589-12f*: filed November 23, 2009, naming PMC, and grieving medications prescribed as inadequate and requesting different medications.

- *STF-11-03-0181-12d1*: filed March 13, 2011, naming defendant Dr. Keeling and complaining that Dr. Keeling "acted unprofessionally" and called plaintiff a "drug addict."

- *STF-11-05-0448-12d*: filed May 5, 2011, naming defendant Dr. Keeling and complaining that the doctor is not submitting a pain management re-evaluation request to the PMC, but is instead "trying things that have already been tried in the past;" plaintiff requested an MRI, and if necessary a referral to a specialist, at Step II of the grievance procedure; this grievance was rejected at Step III, as duplicative of grievance STF-11-03-0181-12d1 above.

- *STF-11-05-0505-12d3*: filed May 25, 2011, naming defendant Dr. Keeling, and complaining that the doctor is not treating his severe back trauma, but is instead using medications that have already been tried in the past.

At issue in this case is whether plaintiff properly identified defendant CMS

in his grievances and thus properly exhausted his administrative remedies against

---

[3]Defendant CMS argues that plaintiff filed seven grievances during the November 10, 2007 to December 6, 2011 time period set forth in the complaint. Two of those grievances were rejected as untimely, and plaintiff did not include those rejected grievances in his complaint. One other grievance that was included in plaintiff's complaint was rejected at Step III as duplicative of an earlier grievance. (Dkt. 26 at pp. 13-18).

17

CMS.  A review of these grievances shows that plaintiff has arguably only

properly exhausted his administrative remedies with respect to defendant CMS

regarding the allegations in Grievance 973 filed on July 27, 2009.  Grievance 973,

although filed several months after CMS's contract with the MDOC expired,[4] did

name CMS and arguably involved conduct by CMS and allegations regarding a

"policy" of denying access to medication "due to the costs that P.H.S. [or CMS]

would save by using non-effective medications of lesser value."  (Dkt. 26-3).

The remaining grievances were filed eight months to more than two years

after CMS stopped providing health care services to inmates in the MDOC.  Those

grievances do not name or otherwise identify CMS or allege a "custom or policy"

of denying health care services, but instead only name defendants Dr. Keeling

and/or PMC and complain of specific acts by those defendants, and thus are

insufficient to put CMS on notice.  Finally, plaintiff's reliance on his medical kites

and verbal requests do not suffice to establish exhaustion because § 1997e(a)

mandates that a prisoner utilize and follow the grievance procedures put in place

by the prison system.  *See Jones*, 549 U.S. at 218; *see also Russell*, 2011 WL

4387589, at *5 (holding that medical kites "do not constitute utilization of a

prison's formal grievance system and do not suffice to establish exhaustion of

---

[4] As discussed in note 2 *supra*, the Court may take judicial notice that
CMS's contract with the MDOC ended on March 31, 2009 and PHS's contract
with the MDOC became effective February 10, 2009.

administrative remedies under § 1997e(a)").

Because plaintiff has failed to name or otherwise identify defendant CMS in the remaining grievances (other than Grievance 973), he has failed to properly exhaust those grievances as to CMS as required by the PLRA. *McCauley v. Corr. Med. Services, Inc.*, 2010 WL 3398743, at *7 (W.D. Mich. July 26, 2010) (dismissing claims against CMS for lack of exhaustion where CMS was only named in one grievance, and the amended complaint did not include any claim against CMS arising from that issue), *Report & Recommendation adopted by* 2010 WL 3398704 (W.D. Mich. Aug. 27, 2010); *see also Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.

Accordingly, the under signed **RECOMMENDS** that defendant CMS's motion to dismiss for failure to exhaust administrative remedies be **DENIED** in part as to Grievance 973, and **GRANTED** in part as to all grievances other than Grievance 973.

### C.     Plaintiff's Section 1983 Claim Against Defendants CMS and PHS

#### 1.     Legal standard

Plaintiff has asserted a § 1983 claim against defendants CMS and PHS, for violation of plaintiff's Eighth Amendment rights.  Under the Eighth Amendment, prisoners have a constitutional right to medical care, and prison officials may not act with deliberate indifference to the medical needs of their prisoners.  *Estelle v.*

19

*Gamble*, 429 U.S. 97, 103-04 (1976).  A viable Eighth Amendment claim has two components, one objective and the other subjective.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2002).  A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind.  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'"  *Farmer*, 511 U.S. at 834.  Courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."  *Hudson*, 503 U.S. at 8 (internal citations and quotation marks omitted).  Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmates's health or safety.  *Farmer*, 511 U.S. at 834.  To establish the subjective component, "the plaintiff must allege facts which, if true,

would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded the risk." *Id.* at 837.  In other words, this prong is satisfied when a prison official acts with criminal recklessness, i.e., when he or she "consciously disregard[s] a substantial risk of serious harm." *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994) (citing *Farmer*, 511 U.S. at 839-40).  "Basically, there must be a knowing failure or refusal to provide urgently needed medical care which causes a residual injury that could have been prevented with timely attention." *Lewis v. Corr. Med. Services*, 2009 WL 799249, at *2 (E.D. Mich. Mar. 24, 2009).

It is well established that "[a] defendant cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis." *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (citing *Monnell v. New York City Dep't of Soc. Services*, 436 U.S. 658 (1978)).  A plaintiff who sues a private or public corporation for constitutional violations under 42 U.S.C. § 1983 must establish that a policy or custom caused the alleged injury. *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998); *Street*, 102 F.3d at 818.  The Sixth Circuit has held that like a municipal corporation, "CMS's [and PHS's] liability must also be premised on some policy that caused a deprivation of [a prisoner's] Eighth Amendment rights." *Starcher v. Corr. Med. Sys., Inc.*, 7 Fed. Appx. 459, 465 (6th

21

Cir. 2001).  Thus, in order to state a § 1983 claim against defendants CMS and PHS, plaintiff "must alleged the existence of a policy, practice or custom that resulted in the injury."  *Moreno v. Metropolitan Gen. Hosp.*, 2000 WL 353537, at *2 (6th Cir. Mar. 28, 2000).  Specifically, a plaintiff must identify the policy, connect the policy to the defendant, and show that the execution of that policy caused the particular constitutional injury alleged.  *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993).  "It is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law.  Some factual basis for such claims must be set forth in the pleadings."  *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986).

### 2.    Analysis

Plaintiff alleges in his complaint that:

- Defendants, [CMS and PHS], upon information and belief, have a custom or practice of denying referrals for expensive medications and off-site surgeries needed by prisoners, including Plaintiff, in order to increase its monetary profits. (Dkt. 1, ¶ 17);

- Defendants, [CMS and PHS], has [sic] a policy and custom of cutting costs by delivering minimal medical care to prisoners, including Plaintiff, by denying medications and off-site surgery for Plaintiff. (*Id.* ¶ 18);

- On July 27, 2009, Plaintiff filed a grievance against Defendants [CMS and PHS] for failing to adequately treat his severe and chronic back pain by prescribing medications that had already been tried and

proven to be ineffective in treating Plaintiff's pain, in order to save
costs and increase their monetary profits.  (*Id.* ¶ 32); and

•    That Defendant's [sic] [CMS and PHS] knew of Plaintiff's serious
     medical need and repeatedly denied him expensive medications,
     corrective surgery, off-site evaluations from specialists, and adequate
     treatment for Plaintiff's severe and chronic back pain, as a cost saving
     measure and to increase Defendant's profits. (*Id.* ¶ 56).

Although plaintiff ultimately might not survive summary judgment on his

claims that defendants CMS and PHS had a "custom or policy" of denying medical

care to save money, the undersigned finds, considering that plaintiff's pro se

complaint is held to a less stringent standard than complaints drafted by lawyers,

*Haines*, 404 U.S. at 520, that plaintiff has arguably pled the existence of a custom

or policy.  Plaintiff's claims against defendants, although on the brink of being

conclusory, appear to be based upon a policy or practice of choosing costs savings

over care, and federal district courts in Michigan have expressly found identifying

such a policy is sufficient to meet plaintiff's burden on a motion to dismiss.  *See,*

*e.g., Garrison v. Davis*, 2009 WL 1508293, at *3 (E.D. Mich. May 29, 2009)

(denying motion to dismiss where plaintiff alleged that CMS acted pursuant to an

"unwritten policy and or pattern to deny necessary and effective medication to the

Plaintiff in order to save money for profit" and that a nurse told plaintiff that

certain medications are not prescribed for prisoners because they are not

authorized because they are too expensive); *Reeves v. Corr. Med. Services*, 2009

23

WL 3876292, at *7 (E.D. Mich. Nov. 17, 2009) (plaintiff sufficiently pleaded that defendant had a cost-cutting policy, and that this policy resulted in the denial of his doctor's request for an MRI).

However, even if plaintiff has adequately alleged that defendants CMS and PHS had a "custom or policy" of denying medical care to save costs, the undersigned finds that plaintiff has not sufficiently alleged that he suffered a deprivation of his Eighth Amendment rights sufficient to survive a motion to dismiss. *See Starcher*, 7 Fed. Appx. at 465 ("CMS's [and PHS's] liability must also be premised on some policy *that caused a deprivation of [a prisoner's] Eighth Amendment rights.*") (emphasis added). At most, plaintiff has alleged a disagreement regarding the proper treatment for his claimed back pain. The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also Owens v. Hutchinson*, 79 Fed. Appx. 159, 161 (6th Cir. 2003) ("A patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim.").

In this case, plaintiff's complaint provides that he has unquestionably received regular and consistent medical treatment for his complaints of back pain.

24

Specifically, his complaint states that he received surgery–a cervical fusion with a

bone grafting– on October 3, 2008–and that he was evaluated and received

treatment from medical personnel in response to his requests on numerous

occasions between November 2007 and September 2011.  Specifically, Plaintiff

alleges numerous consultations and chart reviews on the following dates:

November 10, 2008; May 29, 2009; June 2, 2009; late June or July 2009;

September 18, 2009; November 2, 2009; February 22, 2010; March 24, 2010; June

11, 2010; November 3, 2010; March 9, 2011; May or June 2011; and September

26, 2011.  (Dkt. 1).  Moreover, plaintiff alleges that he was prescribed a TENS

unit and many medications over that same time period, including Ultram,

Excedrin, Neurontin, formulary NSAID, Lodine, Tylenol, Pamelor, Tegretol, and

Dilantin.  (*Id.*).  Plaintiff simply disagrees with the treatment he received.

     In cases where an inmate alleges deliberate indifference but the record

demonstrates that the inmate received medical attention and is, in essence, filing

suit because he disagrees with certain treatment decisions made by the medical

staff, the plaintiff fails to state a claim under the Eighth Amendment.  *See*

*McFarland v. Austin*, 196 Fed. Appx. 410, 411 (6th Cir. 2006) ("as the record

reveals that McFarland has received some medical attention and McFarland's

claims involve a mere difference of opinion between him and medical personnel

regarding his treatment, McFarland does not state a claim under the Eighth

Amendment"); *White v. Corr. Med. Services, Inc.*, 94 Fed. Appx. 262, 264 (6th
Cir. 2004) (affirming dismissal of the complaint for failure to state a claim where
the essence of plaintiff's claims was that he disagreed with the defendants'
approaches to his medical treatment where defendant discontinued plaintiff's
previous course of treatment and prescribed what plaintiff considered to be less
effective treatment); *Catanzaro v. Michigan Dep't of Corr.*, 2010 WL 1657872, at
*3 (E.D. Mich. Feb. 28, 2010) (plaintiff failed to state a claim of deliberate
indifference when "he specifically alleges that he was given medications that
proved ineffective to relieve his symptoms, rather than medications that he
believed were more effective, such as Drixoral, Sudafed and Deconamine"),
*Report & Recommendation adopted by* 2010 WL 1657690 (E.D. Mich. Apr. 22,
2010); *Allison v. Martin*, 2009 WL 2885088, at *7 (E.D. Mich. Sept. 2, 2009)
(plaintiff failed to state a claim of deliberate indifference in violation of the Eighth
Amendment when the complaint reveals plaintiff was seen over a dozen times for
his eczema and was given medication, though not the "type" and quantity he
requested).

Given the regular, consistent care and treatment plaintiff received, it cannot
be said that the treatment received was so woefully inadequate as to state a
violation of plaintiff's Eighth Amendment rights. Thus, plaintiff's complaint on
its face negates the subjective element required to prove a deliberate indifference

claim, and because plaintiff's allegations simply constitute a difference of opinion between himself and medical personnel regarding his medical treatment, he has failed to allege facts that, if proven, would rise to the level of deliberate indifference in order to support an Eighth Amendment claim. *See Estelle*, 429 U.S. at 105-06 (holding that where a plaintiff was seen by medical personnel on 17 separate occasions and was prescribed medications, the medical decisions did not represent cruel and unusual punishment); *see also Portis v. Caruso*, 2010 WL 3609364, at *8 (W.D. Mich. July 28, 2010) (holding plaintiff failed to state a § 1983 claim against CMS because even if plaintiff alleged a policy to provide "inadequate and untimely medical care," he failed to allege deliberate indifference), *Report & Recommendation adopted by* 2010 WL 3609517 (W.D. Mich. Sept. 13, 2010); *Lewis v. Corr. Med. Services*, 2009 WL 799249, at *4 (E.D. Mich. Mar. 24, 2009) (plaintiff failed to state a claim of deliberate indifference against CMS because he failed to demonstrate that anyone was deliberately indifferent to his medical needs in reliance on any specific custom or procedure maintained by CMS).

Therefore, the undersigned **RECOMMENDS** that plaintiff's claims against defendants CMS and PHS should be **DISMISSED** pursuant to Fed. R. Civ. P. 12(b)(6).

### C.     Third Party Beneficiary Breach of Contract Claim

Plaintiff also brings a claim against defendants CMS and PHS for breach of contract, as a third party beneficiary.  Plaintiff alleges that during the time of the alleged events giving rise to this complaint, CMS and PHS both had contracts with the MDOC to provide adequate medical services to inmates.  Plaintiff claims that defendants owed a duty to plaintiff as a third-party beneficiary of the contracts, and that defendants breached the contracts by failing to provide adequate health care to plaintiff.  (Dkt. 1, ¶¶ 77-85).

Defendants argue that plaintiff is at best an incidental beneficiary to the contracts between CMS or PHS and the MDOC, and thus does not have standing to bring this claim as a third party beneficiary under MCL § 600.1405 because Michigan law provides that only intended third party beneficiaries may sue for breach of a contractual promise in their favor.  Defendants further argue that plaintiff has failed to show a breach of the alleged contracts because he acknowledges in his complaint that he received surgery, treatment, consultation and medication for his claimed back pain.

MCL § 600.1405 provides, in relevant part:

Any person for whose benefit a promise is made by way of contact, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.

(1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to

28

give or to do or refrain from doing something directly to or for said person.

MCL 600.1405.  The law is well-settled that "[a] 'mere beneficial interest in a contract is not enough to confer standing. . . .'"  *See Haithcox v. Greiner*, 2010 WL 1292712, at *5 (E.D. Mich. Mar. 15, 2010) (quoting *Stillman v. Goldfarb*, 172 Mich. App. 231, 431 N.W.2d 247, 251 (1988)), *Report & Recommendation adopted by* 2010 WL 1292709 (E.D. Mich. Mar. 31, 2010).  Thus, "[a] third person cannot maintain an action upon a simple contract merely because he would receive a benefit from its performance or because he is injured by the breach thereof."  *See Dynamic Constr. Co. v. Barton Malow Co.*, 214 Mich. App. 425, 428, 543 N.W.2d 31 (1995).  Rather, third party beneficiary status "requires an *express* promise to act to the benefit of the third party; where no such promise exists, that third party cannot maintain an action for breach of the contract." *Haithcox*, 2010 WL 1292712, at *5 (quoting *Dynamic Constr.*, 214 Mich. App. at 428) (emphasis added).

Plaintiff here has only alleged that the defendants entered into contracts with the MDOC to provide adequate health care to Michigan's prison population. (Dkt. 1).  However, plaintiff has failed to plead or otherwise show that defendants CMS or PHS made an "express promise" to act to or for the benefit of plaintiff when entering into their respective contracts.  As such, plaintiff is merely an

incidental beneficiary, at best, and has not established that he has standing to sue

as a third-party beneficiary to the contracts between CMS and PHS and the

MDOC.  *See Caruthers v. Corr. Med. Services, Inc.*, 2011 WL 6402278, at *9

(W.D. Mich. Dec. 21, 2011) (holding "Plaintff is not a third-party beneficiary of

the contract [between CMS and MDOC]"); *Haithcox*, 2010 WL 1292712, at *5

("Plaintiff does not have standing as a third party beneficiary under M.C.L. §

600.1405); *Price v. Caruso*, 2009 WL 4823865, at *1 (W.D. Mich. Dec. 9, 2009)

("Magistrate Judge's determination that Plaintiff's conclusory allegations of third-

party beneficiary status would not withstand a motion to dismiss was not clearly

erroneous" where "Plaintiff provided no evidence or even any allegations

concerning the contractual terms that established him as a third-party

beneficiary"); *see also Allah v. Hayman*, 2011 WL 1322186, at *4 (D.N.J. Apr. 1,

2011) (noting "[o]ther courts in this District have *unanimously* concluded that the

CMS-DOC contract does not provide an inmate with standing to sue") (emphasis

added, citations omitted).  Further, courts have found that "engrafting a third party

beneficiary theory in what is at its core an Eighth Amendment deliberate

indifference claim would be an end run around the vicarious liability rule of

*Monell v. Dep't of Soc. Sec. of NY*, 436 U.S. 658, 691 (1978), which holds that

liability under § 1983 cannot be based on the theory of *respondeat superior*."  *See*

*Haithcox*, 2010 WL 1292712, at *6 ("Plaintiff cannot evade the strictures of a

constitutional claim–or for that matter, a medical malpractice claim–by recasting it as a third party beneficiary claim."); *see also Caruthers,* 2011 WL 6402278, at *9 (holding "Plaintiff cannot perform an 'end run' around the vicarious liability rule by recasting his Eighth Amendment claims as third-party beneficiary claims").

Accordingly, the undersigned **RECOMMENDS** that plaintiff's third-party beneficiary claims against defendants CMS and PHS be **DISMISSED**.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' CMS's and PHS's motions to dismiss be **GRANTED** and that plaintiff's claims against them be **DISMISSED**.  The undersigned further **RECOMMENDS** that Defendant CMS's Motion to Dismiss for Failure to Prosecute Pursuant to Fed. R. Civ. P. 41(b) (Dkt. 60) be **TERMINATED** as **MOOT**, and that Defendants's PHS's and Dr. Marvin Keeling's Motion to Dismiss Plaintiff's Suit Pursuant to Fed. R. Civ. P. 41 (Dkt. 64) be **DENIED IN PART** as **MOOT** as to Defendant PHS only.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 8, 2013                    s/Michael Hluchaniuk
                                          Michael Hluchaniuk
                                          United States Magistrate Judge

**CERTIFICATE OF SERVICE**

I certify that on <u>February 8, 2013</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Brian J. Richtarcik, Matt H. Wesorick, Randall A. Juip, Kimberley A. Koester, Ronald W. Chapman, and Kevin R. Himebaugh</u>, and I certify that I have mailed by United States Postal Service the foregoing pleading to the following non-ECF participant(s), at the following address(es): <u>Timothy Schweiger, ID# 465397, PUGSLEY CORRECTIONAL FACILITY, 7401 East Walton Road, Kingsley, MI  49649.</u>

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov
